THE BRONSON AND TOWNSEND COMPANY *v.* RICHARD BATTISTONI

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 8—decision released November 26, 1974

*William J. Egan,* for the appellant (plaintiff).
*Jonathan F. Ells,* for the appellee (defendant).

SHAPIRO, J. The plaintiff brought suit against the defendant seeking damages for the conversion of certain of the former's personal property. The defendant filed a counterclaim in which he sought damages, alleging that he was employed as a salesman for the plaintiff; that he was to be paid by means of a monthly drawing account against a commission of 5 percent of gross sales; that he had gross sales in a claimed amount for which he received a partial payment leaving due him a balance; and that he sold certain tractor units entitling him to a bonus of ten dollars for each unit sold. The trial court rendered judgment for the plaintiff on the complaint in the sum of $1939.87 and for the defendant on his counterclaim in the sum of $3286.66. The trial court set off the plaintiff's recovery against the defendant's recovery and accordingly awarded the defendant the net amount of $1346.79. Only the plaintiff has appealed.

The plaintiff claims that the trial court's conclusion that the defendant's "bonus could be reasonably . . . calculated" was not supported by the finding. The court's conclusions are tested by the finding. They must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Hall* v. *Weston,* 167 Conn. 49, 355 A.2d 79.

The finding, which is not subject to correction, recites the following pertinent facts: The plaintiff, engaged in the business of selling power equipment at wholesale, employed the defendant as a salesman from October 1, 1967, through November 4, 1968, at which time he was discharged. The agreement for the defendant's employment and compensation was the result of oral discussions and never was reduced to writing. The plaintiff claimed that its agreement with the defendant provided that he was to receive an annual salary of $8000, an additional $2000 for expense reimbursement and certain fringe benefits including insurance, medical coverage and a bonus arrangement at the end of the year. The plaintiff had no fixed formula for determining the amount of this annual bonus. The basis of compensation was not the same for all of the plaintiff's salesmen. For the year 1968, in the territory served by him, the defendant had gross sales of $268,817.05, some of which sales were generated by orders submitted by him to the plaintiff while the balance resulted from direct orders to the plaintiff from customers for which the defendant was entitled to credit. For the period that he was employed, the defendant received gross compensation of $833.33 each month which included expense reimbursement. In July, 1968, the defendant received an additional $1000, which the plaintiff in its records identified as a bonus. During the time of the defendant's employment, the plaintiff employed four or five other salesmen, each of whom was compensated, at least in part, on a salary basis. Two of these salesmen, Ayer and Lemire, had been employed for over ten years, and each one received an annual salary of $15,000. In addition, at the end of the 1968 calendar year, Ayer received a bonus of $8500 and Lemire $7500. These bonuses

were based on a variety of undefined factors including the plaintiff's profits, sales of the individual salesmen, cost of covering the territory, and how well the salesman collected from and serviced the customers in his territory. Three other salesmen received monthly salaries. In June, 1968, the plaintiff notified each of its salesmen, including the defendant, that each would receive a special bonus or "spif" for each tractor unit which he sold. Under the terms of the "spif" programs each salesman had the responsibility of submitting evidence of sales eligible for the "spifs" separately from the orders which he submitted in the ordinary course of business. The defendant sold twelve of said units and has not been paid a special bonus of $120. In calendar year 1968 the plaintiff had gross sales in excess of two million dollars.

There was no challenge to the court's conclusion that no credence could be given to the defendant's claim that he was entitled to a 5 percent commission on gross sales. The court properly could conclude that no credence could be given to the plaintiff's claim that the agreement of the parties was that the defendant's compensation was to be limited to a payment of $10,000 per year. It could also conclude quite properly that the parties impliedly agreed that the defendant was to receive a monthly draw and that, in addition thereto, it was intended and contemplated by both parties that the defendant was to receive additional compensation in some form, in payment of a bonus, on the basis of its unchallenged finding that the plaintiff testified that the defendant would receive the same fringe benefits as its regular salesmen received, and its finding that "[f]ringe benefits included . . . a bonus arrangement at the end of the year, based on the

company's profits and an evaluation of a salesman's performance, including the amount of his sales and payment of accounts." The court, however, could not conclude that the bonus could reasonably and equitably be calculated on the basis of a pro rata additional payment of a bonus because it found that no fixed formula existed for determining the amount of the bonus, that the basis of compensation was not the same for all salesmen, and that the basis for difference in the bonuses of Ayer and Lemire, two of its salesmen, did not appear. Thus, there was absolutely no basis for its conclusion that the bonus could reasonably and equitably be calculated on the lower of the bonuses paid to Ayer and Lemire, or $7500, that since the annual base salary of the defendant was $10,000 or two-thirds of Lemire's salary of $15,000, the defendant reasonably may be entitled to additional compensation in the form of a bonus of $5000, and that having been discharged after only ten months of the calendar year 1968, the defendant should receive $4166.67 or ten-twelfths of said $5000.

Neither side presented any significant evidence in an appendix. This court resorted to a search of the transcript pursuant to Practice Book § 721[1] and we were unable to find any testimony as to the payment of the defendant's customers accounts, especially as compared to salesmen receiving bonuses, or to any other basis of evaluation of the defendant's performance compared to the plaintiff's other sales-

---

[1] "[Practice Book] Sec. 721. ——PRINTED TESTIMONY DEEMED TO INCLUDE ALL MATERIAL TESTIMONY The testimony printed in the appendices will be deemed to embrace all testimony produced at the trial material to the issues on the appeal, although this court may, if sufficient cause appears, consult the transcript of evidence on file to supplement or explain that printed."

men. It does not appear that there was any testimony, argument or consideration at the trial with respect to ascertaining a formula for calculating the defendant's bonus, other than the defendant's 5 percent of gross sales theory, which was expressly rejected by the trial court. This was so despite warning by the court and its attempt at requiring the parties to deal with the issues. If the court has heard no evidence there is ordinarily no basis upon which it can make a finding of facts. *Wilusz* v. *Ives*, 152 Conn. 352, 354, 206 A.2d 841; Maltbie, Conn. App. Proc. § 126.

It is true that an objection to a variance of proof from the pleadings is waived if not taken at the trial. *Winsor* v. *Hawkins*, 130 Conn. 669, 670, 37 A.2d 222; *Weiner* v. *Loew's Enterprises, Inc.*, 120 Conn. 581, 584, 181 A. 921; *Antinozzi* v. *Pepe Co.*, 117 Conn. 11, 13, 166 A. 392; *Chinigo* v. *Ehrenberg*, 112 Conn. 381, 383, 152 A. 305. Here there was no proof by either party nor was there any offer of evidence as to a variance, and it appears that the first time either party would have been able to object to a variance would have been after the judgment of the court was rendered. Since there was no opportunity to object to the variance before the end of the trial, it cannot be said that the plaintiff waived his right to object to the court's judgment which was limited to the pleadings and to the proceedings at the trial.

In an action at law based upon contract, the party seeking recovery has the burden of proving by the fair preponderance of evidence the amount of his damages. See *Jones Destruction, Inc.* v. *Upjohn*, 161 Conn. 191, 199, 286 A.2d 308; *Dorne* v. *Williams*, 140 Conn. 193, 201, 98 A.2d 796. The court must have

evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount. Cf. *Hedderman* v. *Robert Hall of Waterbury, Inc.,* 145 Conn. 410, 414, 144 A.2d 60; but cf. *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 104, 285 A.2d 330, cert. denied, 404 U.S. 1016, 92 S. Ct. 675, 30 L. Ed. 2d 663.

Had the defendant sought recovery in quantum meruit, the court, on the basis of the evidence before it, would have been free to apply an evaluation of the reasonable amount of damages. *Bianco* v. *Floatex, Inc.,* 145 Conn. 523, 525, 144 A.2d 310; *Freda* v. *Smith,* 142 Conn. 126, 136, 111 A.2d 679. The defendant, however, failed to comply with § 89 of the Practice Book which states that "[a] party seeking equitable relief shall specifically demand it as such, unless the nature of the demand itself indicates that the relief sought is equitable relief." The defendant, in his pleadings, in his brief, in his appendix, and at trial, failed to allege or even to submit any testimony as to what constituted a reasonable bonus, leaving the trial court without basis by which to accord him relief. See *Buol Machine Co.* v. *Buckens,* 146 Conn. 639, 643, 153 A.2d 826.

The subordinate facts as found by the court fail to support its conclusion that the defendant is entitled, reasonably and equitably, to receive additional compensation for his services in the form of a bonus, above the $1000 bonus previously paid by the plaintiff to him.

The court concluded that the defendant was entitled to recover of the plaintiff the sum of $120 in special bonuses on the sale of twelve tractors.

Under its finding of the subordinate facts, the court found that under the terms of the plaintiff's "spif" programs, it is the responsibility of each salesman to submit evidence of the sales eligible for the "spifs" separately from his regular order. Then the court found that the defendant sold twelve of the units and has not been paid a special bonus of $120. Since the court's conclusions are tested by the finding, the conclusion must stand, since it is logically and legally consistent with the fact of the sale as found by the court. While the plaintiff argues that there is no finding that the defendant ever submitted the evidence of the eligible sales, this is implicit in the court's finding that the twelve units were sold by the defendant.

There is error in the amount of the judgment only, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff in the amount of $1819.87.

In this opinion the other judges concurred.